Good morning, Your Honors. My name is Wayne McMillan. I'm representing Ms. Concepcion. I'm just going to address the jurisdictional issue because that seems to be what the case has turned on thus far. I think the issue presented in the steady motion and argued by both sides is whether an alien who is removable from the United States, in fact, who's been found removable from the United States by both the immigration court as well as the BIA, and who concedes one ground of removability but contests the other ground of removability, whether or not the court has jurisdiction to hear that on direct appeal. And we think that the answer is very clearly no, and I believe that that falls within the decisions of a number of cases in this circuit as well as in all the other circuits. Ms. Concepcion is a longtime LPR, Legal Permanent Resident, of the United States with three U.S. citizen children. Back in 2000, she pled guilty to the charge of 11379A of the Health and Safety Code, which is one of those California violations that deals with sales, transportation, importation, distributing, giving away, and what have you. And the court in Rivera-Sanchez, in a number of previous cases, has held that that standing by itself is insufficient to demonstrate that the conviction was an aggravated felony. In fact, Ms. Concepcion, in her plea statement, stated that she was guilty of aiding and abetting other people in transporting methamphetamine. But that wasn't her plea, was it, Counselor? Her plea was guilty. The plea was guilty to the charge of sale of methamphetamine, and that was in count two. Count one, which charged manufacturer, was dismissed, but the plea was guilty. The plea was not the factual basis, was it? Well, the plea is guilty, but is the plea guilty to every single thing stated in count two? And the answer to that is no. I don't agree with you. Based on what I have here, would you explain that for me? It seems to me that the record that you have brought to us is preliminary to the actual plea. You're talking about the factual basis that's tendered with the plea agreement. That's right. She can't plead guilty to part of the charge by correspondence, can she? Yes, she can. Can she? She can. Doesn't there have to be a hearing before the California court at a time and place where she's present before a judge, where the judge explains to her what her rights are, makes a determination that she does understand the charge that she's pleading guilty to, where she has counsel present to represent her, where the judge determines that she is competent and then listens to her factual basis and accepts the plea of guilty. Isn't that what happens? In a very short-circuited manner, that's what happens in California guilty pleas, Your Honor. Yes. But you didn't bring that part of the record here. You brought a partial record which contains the plea agreement, in which your argument is that she only admitted to aiding and abetting in the transport. And it seems to me that if we are to avoid collateral impeachment of the California judgment, we have to assume the regularity of the California proceeding, don't we? Wherein she admitted to count two in its entirety. She admitted to the sale of methamphetamine. And isn't the sale of methamphetamine equivalent to trafficking? And isn't trafficking equivalent to aggravated felony? That issue was dealt with in Rivera-Sanchez, where an individual pled guilty to 11-360, which is an identical statute that talks about selling, transporting, what have you. But that was different. That's the same. How can it be different and the same? The statute is set forth in the disjunctive. However, the charge was made in the conjunctive. The holding in the case was, and it was a marijuana case, as I recall, that it wasn't sufficient to plead guilty to a violation of the statute where it is set forth in the disjunctive and only transport could have been what actually occurred. In this case, count two contained the charge that she transported, that she sold, that she gave away, in effect was dealing in methamphetamine, and she pleaded guilty to that charge. She pled guilty to the charge because that's what she had to do. You can only plead guilty to the charge that's alleged, which is in the conjunctive. But in her plea agreement, she only admitted to transporting methamphetamine. But my question to you is, isn't that preliminary plea agreement, which is primarily a vehicle to get her before the court to move the court to change her plea to guilty and precedes the court appearance and the court's determination here and the entry of the plea, what occurred later is what should govern. Isn't that correct? Well, you are presuming that they took place on two separate occasions. That's incorrect. She stood before the court. She had a two-page plea agreement. The plea agreement was submitted to the court. The court takes a look at it and says, is this your agreement? Did you sign it? Did you check all these boxes? Do you know your rights? And then they accept her plea. It all takes place in one proceeding. And the only thing that she admitted to was transportation. She did not admit she pled guilty to a conjunctive count, but she only pled guilty to, she only admitted the transportation. And I submit that that's exactly what happened in Rivera-Sanchez. The defendant pled guilty to a count that reflected that particular section of the Health and Safety Code. And the court has simply held that that count, this Court has held that those counts in the conjunctive or the disjunctive are not on their face drug trafficking offenses. And that's what we're arguing here, and I think the law is very clear, and I think the facts are very clear.  The district court denied the stay pending appeal? That's how it got here, a denial of a stay. And we appealed the denial of the stay. Right. And that's what we're litigating here. Do you have a stay now? Yes. So our court This Court granted the stay when it granted my motion to, my petition for a re-hearing. This Court granted a stay. So she has a stay right now? Yes. I'm sorry. Are there any other questions? You're down to about a minute and a half you want to reserve or? Well, I've Your choice. I've not, with all due respect, Your Honor, I've not gotten to argue the, what I think is the issue of the case, which is a jurisdictional issue. Sure. Go right ahead.  When the case was, when the Board of Immigration Appeal found that she was deportable for two separate criminally related grounds, one, an aggravated felony, two, a state drug offense, we filed a petition for review. The petition for review was met with a motion to dismiss by the government. The motion to dismiss stated that regardless of whether Petitioner is convicted of an aggravated felony, as that term is defined, she is in any event convicted of a controlled substance offense. Under INA Section 242a, the Court lacks jurisdiction over a criminal alien convicted of a controlled substance offense. Petitioner's pleadings to the Court address the issue of whether she's an aggravated felon. We do not address the issue of the Court's jurisdiction over the petition. Insofar as the Court lacks jurisdiction over the petition for review, it should dismiss it. In the face of that, I voluntarily dismissed it. My option would have been to, I don't know, oppose it in some way and then wait three or four months and let the Court dismiss it, because the government's position was absolutely correct. The Court did not have jurisdiction to entertain this petition for review. Immediately upon dismissing it, I filed a habeas corpus petition. I arrived at the same place that I would have arrived had the Court dismissed the petition for review. I just got there about three or four months earlier, and therefore less time that my client had to spend in custody. Well, we'll ask the government about that. All right. Thank you. Thank you, Counsel. Your time has expired. Good morning, Your Honors. May it please the Court. Good morning. My name is Aviva Foxter for the Respondents. In this case, Your Honors, the district court's finding that Petitioner had no likelihood of success on the merits of her stay should be affirmed and the interlocutory appeal should be dismissed for two independent reasons. The first reason being the same in which this Court relied in its previous memorandum order in this case, which has since been withdrawn. The Petitioner failed to exhaust her judicial remedies by voluntarily dismissing the original petition for review. Well, that's the issue Counsel was just talking about, and it troubles me. The government's position seems to be inconsistent. Why should we care about that other proceeding when there was no basis upon which the Court of Appeals could have acted in any event? I mean, if it was non-jurisdictional, why should we require that they exhaust remedies? Well, first of all, Your Honor, there are cases in this circuit, particularly Noriega-Lopez, Castro-Cortez, and a case called Lang, which do say that in these types of proceedings, the alien can be required as a prudential issue to exhaust the judicial remedies that are available. In addition to the ---- Even if there is no jurisdiction? Even if there's no jurisdiction. This case is this Court ---- Now, why wouldn't that just be a totally futile act? You've got a law enacted by Congress that says the Court of Appeal does not have jurisdiction over this claim, and you're the government of the United States' position is that the Petitioner should nevertheless file an appeal to the Court of Appeals when all ---- everybody knows, reading the law, that the Court of Appeals has no jurisdiction. Well, most recently, this Court in Cazares actually said that even though it did not have jurisdiction in a case that also had a controlled substance violation very similar to the one at hand and a drug trafficking charge, that it would indeed make a decision in the first instance on every jurisdictional bar. In other words, both whether it was a controlled substance offense and whether it was a drug trafficking aggravated felony. But that was an unusually procedural, procedurally postured case. And it did ultimately transfer it to the district court, which had jurisdiction. That's correct, Your Honor. But in that case, the Court made the determinative finding. Essentially, in this case, with regard to relief, the definitive finding is whether or not Petitioner was in fact convicted of what constitutes a drug trafficking aggravated felony. That informs the rest of the proceedings, both in this Court and in the district court. And so the ---- so, yes, that did result in a transfer to the district court, but with instructions. And ultimately, if these cases go to district court first, they're going to come here on appeal, and the issue is going to be aggravated felony. This Court will then have to decide the aggravated felony issue and send it back to the district court. So even in the instance ---- That's why your position is inconsistent, because you're saying that you're agreeing that there was no jurisdiction in the court of appeal, that the proper method for pursuing your claim was filing for habeas in the district court and then appealing it to the court of appeal, which is what we have in front of us right now. Well, Your Honor, I'd just like to clarify that if the case had in fact gone on direct review and this Court had made a determination on the aggravated felony, then the habeas would not have necessarily even been necessary. If this Court had said this is an aggravated felony, then she has no relief. But we wouldn't have jurisdiction to grant the relief. We would have to transfer it to the district court, because we have no jurisdiction on direct appeal. Right. Assuming there was relief and that's correct. And moving on ---- Well, now, before you move on, I've just been presented with a document signed by you which cites in a Rule 20HA citing to Ibarra-Galindo, which you say conflicts with Cazares. So what's your argument? You're relying on Cazares, except that you're citing a case which you say conflicts with it. Well, we're sort of in an interesting position regarding Cazares because it seems to be that the Supreme Court recently in Leocal, footnote 8, changed the reasoning or disagreed with the reasoning in Cazares regarding how sentencing guidelines cases are used to inform immigration-type cases where it's a similar sort of conviction. That's footnote 8 in what case? Leocal. That was the first 28J letter case that I sent in. The Supreme Court seemed to say that the sentencing guidelines cases have to be considered the same way as immigration cases, in other words, that there can't be two different standards. However, petition for rehearing and a motion for reconsideration of the denial of that petition was already denied in Cazares. So the government does point out that there is some conflict within cases in this circuit and with the Supreme Court regarding Cazares. However, we recognize that until something is done by this Court about it, we are bound to follow it. So you're now referring to the issue of whether we apply the Taylor modified approach here to determining whether this is an aggravated felony? Exactly. And what the test is and what cases are to be looked at. The BIA has before looked at sentencing guidelines cases. Other circuits have looked at sentencing guidelines cases. This Court did so previously in Ibarra-Galindo, but then seemed to change route in Cazares, and the Supreme Court now seems to have said we should be construing the sentencing guidelines cases and the immigration cases consistently. That's right. And didn't it also say, I don't have it in front of me, but wasn't that also the case that said expressly what documents you should consider when you are conducting the modified categorical approach? I believe that case did mention that, and there's a long line of cases that mention even in passing what kind of documents are to be considered. And certainly in this case, we do have sufficient documentation in the form of her plea agreement and the indictment. And again, in this case, as Judge Lovell pointed out, Petitioner pled conjunctively. She pled essentially to having done every element of that particular statute. And we can't go behind in civil immigration proceedings, we cannot go behind the criminal conviction to say, well, maybe she pled to this and maybe she pled to that and, Your Honor, I can really plead to that. Well, she pled to the charge, which was the violation of the transportation section, but that does not necessarily in and of itself mean that that's an aggravated felony, does it? Well, the charge, this Court has held that the charge in and of itself, and again, the statutory language is written in the disjunctive. It's an or wording. And this Court has held that in that instance, if you're looking at the or wording that no, on its face, it doesn't constitute an aggravated felony violation. That's my point. Right. On its face. However, this Court has also stated that the elements of that statutory section do include drug trafficking, aggravated felony offenses. And in this case, she pled to every section, every part of that statutory language was pled to by Petitioner in the conjunctive. So she definitely did plead to that. It's an overly technical reading, though, because she couldn't possibly have done every single thing that's in here. For example, it says she both sold and gave away the methamphetamine. Well, again, if that is a defect, that's the type of defect that she should have cured by going back to the criminal court. She did cure it. She explained when she said what she was pleading to, she admitted to aiding and abetting the transportation of the drug. That's the offense conduct within the statute that she said she did. That's correct, Your Honor. And again, the California statutes do place the person who aided and abetted in the same posture as a ---- It's not the issue. It's the transportation's the issue. Certainly, Your Honor. And she certainly did. Transportation in this case should be found to be equivalent to trafficking. She, if you look at the indictment, was ---- Well, I'm looking at the indictment, and you're talking about count two, right? Yes. Okay. That in and of itself doesn't do it. If you're going to prevail, you have to be able to argue, it seems to me, that something that was said in response to question number 21 on page 16 does it. And all she says there is, on July 2, 2000, in Orange County, I willfully and unlawfully aided and abetted the transportation of meth. Does that do it? Yes. Why? According to the government, that does it. Why? Because she wasn't transporting for personal use. There's no personal use exception for methamphetamine. She was transporting for the purposes of trafficking. There's no way that she can get around that. In addition, the counts to which she fled involved another individual. She was involved in a conspiracy to traffic methamphetamine. And that transportation was part ---- was a trafficking act. That transportation was not for personal use or for any other reason. How do we know that? Because of the way that the statute is worded, Your Honor. It is worded as ---- No. You're talking about facts. And as I understand what the Supreme Court has said, we can't go outside the charging documents and the plea agreement in analyzing the facts that existed at the time of the plea. And you're bringing in all these facts that I don't think are in here. Well, it's just, as the Board pointed out in its decision in this case, it's illogical to assume that an alien was involved in this type ---- there's other individual ---- there's another individual involved. And also the law says that it's ---- there's no exception for personal use. Then it's illogical to say that she was transporting, but it wasn't for the purposes of trafficking. We don't have to bring in facts that are not in the record for that to be the case. And in addition, again ---- Ramirez-Sanchez, Rivera, excuse me, Rivera-Sanchez, we had a similar situation and we sent it back to the ---- for consideration of the justiciable, noticeable elements which could flesh that out. Any reason why we shouldn't do that here? Well, first of all, Rivera-Sanchez, again, I believe the alien pleaded in the disjunctive, not in the conjunctive, to every element of the statutory language. So that there was more of a question about what was involved than in Rivera-Sanchez. So, therefore, we don't really think that it needs to be sent back for that. In addition, I believe that it was Rivera-Sanchez, there was just abbreviations for what had actually happened. Counselor, your time has expired. Mr. McMillan, I'm going to give you another minute, because we took the government over two minutes over their limitations, so if you want to respond, you may do so. In a deportation case involving a legal permanent resident, the government has the burden of proving by clear and convincing evidence that she is deportable. They have to prove that by the complete record. The complete record of this case demonstrates that she was transporting, and that's all. Under California law, a person can be convicted of transporting a controlled substance without any commercial element in it whatsoever. I can take my methamphetamine, stick it in my pocket, walk across the street, and be charged with and convicted of transporting. We cited those cases in our brief. There is no commercial element. Under the law of this circuit, under Cazares, there has to be, unless the statute on its face clearly demonstrates it's a trafficking statute, then there must be some type of commercial element to the activity itself. That's why they said, one of the reasons they said that simple possession, even though it's a felony of a state offense, is not a trafficking offense. That's what Cazares said. The aggravated felony is not a trafficking offense. Trafficking offense is not an aggravated offense. All right. Is she nevertheless removable under the controlled substance prong? Yes. We conceded that from the beginning. The only issue is whether this is an aggravated felony. If it's not an aggravated felony, she is eligible for cancellation of removal, a remedy that's available to long-term permanent residents. In her case, a woman who's lived here since she was pre-teen, three United States citizens, children, entire family here, has an excellent chance of having that relief, granted if this were not found to be an aggravated felony. All right. Thank you, counsel. The case just argued will be submitted for decision, and we will hear argument in court.
judges: O'scannlain, Wardlaw, Lovell